# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| EDWARD C. HUGLER, Acting Secretary of Labor, United States Department of Labor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:16-CV-00549-DGK ) |
| LEGEND OF ASIA, LLC, TONG LIN, and YU MIN XIAO, | ) ) ) ) |
| Defendants. | ) |

## ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY

Plaintiff Edward Hugler, Acting Secretary of Labor, United States Department of Labor, filed suit against Legend of Asia, LLC ("Legend of Asia"), its owner, Tong Lin ("Lin"), and her husband, Yu Min Xiao ("Xiao") for violations of the minimum wage, overtime, and recordkeeping provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* The alleged minimum wage and overtime violations primarily stem from Legend of Asia's arrangement to pay some workers with a combination of a "salary" and meals and lodging. The alleged recordkeeping violations are the result of a flood that destroyed many of Defendants' business records.

Now before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc 34) and Motion to Exclude Expert Testimony of Defendants' Expert Witness (Doc. 31).[1] For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for

---

[1] Plaintiff requests oral argument on his motion for partial summary judgment and motion to exclude expert testimony. Because the Court has determined oral argument would not be helpful in resolving the issues, Plaintiff's request for oral argument is denied. Plaintiff's motion has been decided on the parties' written memoranda.

Partial Summary Judgment (Doc. 34), and DENIES AS MOOT Plaintiff's Motion to Exclude Expert Testimony of Defendant's Expert Witness (Doc. 31).

**Undisputed Material Facts[2]**

Legend of Asia is a buffet-style Chinese restaurant that opened in 2011. Xiao is the manager of Legend of Asia. His primary responsibilities are hiring, firing, training, and supervising employees, setting the rate of pay for each employee, and processing payroll.

Lin is the sole owner of Legend of Asia and works at the restaurant as an assistant manager. Lin is at the restaurant nearly every day and is primarily responsible for scheduling hosts, working as a hostess, monitoring the cleanliness of the dining room, opening and closing the register, and occasionally resolving customer complaints. While she has no set work schedule, she is generally at the restaurant during the busier lunch and dinner times as well as at opening and closing times. Lin denies she has any responsibility for paying employees, however her signature appears on at least four payroll checks issued to servers. When Xiao is not at the restaurant, Lin acts as the substitute manager by supervising the server employees and handling customer complaints.

Xiao and Lin do not speak, read, or understand the English language proficiently. They often rely on their son to translate English for them. Even so, their contracts with their employees and rental agreements, discussed later, are all written in English.

Three categories of workers are subject to this motion, "Hispanic kitchen employees," "Chinese kitchen employees," and "server employees."[3] As pertinent to this motion, the

---

[2] The Court excluded asserted facts that were immaterial to the resolution of the pending motion, asserted facts that were not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

[3] Legend of Asia refers to the Spanish-speaking kitchen employees as Hispanic or Mexican employees and Chinese-speaking kitchen employees as Chinese employees. *See* Def.'s Sugg. in Opposition at 9, 13, 14, 17 (Doc. 38).

allegations of FLSA violations for the kitchen employees involve the arrangement to pay kitchen employees with a combination of cash wages and meals, lodging, and transportation. Regarding the server employees, the allegations of FLSA violations concern proper recordkeeping.

Compensation for kitchen employees is governed by a "Restaurant Salary Contract" which is a template-type form stating a monthly wage amount, that the wage is paid part in cash and part in rent and meals, and that the agreement covers a sixty-hour workweek. *See* (Doc. 35-17). Each month the kitchen employees are paid the cash portion of their wages and are given a payment receipt, which they sign to acknowledge the cash wages received.

According to the terms of the Restaurant Salary Contract, kitchen employees are provided housing as part of their wages. Employee housing occurs at two locations: 3707 SE Adams Drive ("Adams Drive"); and 1801 SW 8th Street ("8th Street"). Both Lin and Xiao co-own the Adams Drive property and Legend of Asia rents the building for use as employer-provided housing. Legend of Asia also leases the four apartments at 8th Street from Chang Zhao, the restaurant's kitchen manager, for employer-provided housing. Lin's signature appears on both rental agreements on behalf of Legend of Asia.

In addition to meals and lodging, Legend of Asia provides transportation to and from the restaurant for the employees who reside at the 8th Street location.[4]

Legend of Asia pays its server employees monthly through a payroll process. Two servers hired on a probationary basis quit after only a week on the job. These two servers refused to provide their personal information to Xiao, and therefore they could not be added to the payroll records.

---

[4] The Hispanic kitchen employees primarily live in the 8th Street apartments and use the transportation provided by Legend of Asia.

In August 2014, the United States Department of Labor ("DOL") began investigating Legend of Asia for compliance with the FLSA. The investigation period covered September 3, 2012, to July 31, 2015.

Prior to the investigation by the DOL, Legend of Asia maintained a record of the start and stop time for employees in a paper notebook. These records, along with time sheets, employee schedules, and payroll records, were stored in the basement of Lin and Xiao's personal residence. On three separate occasions in 2013, 2014, and 2015, Lin and Xiao's basement flooded. These floods destroyed much of the business records for the time periods subject to the DOL investigation.

During the investigation, the DOL investigator, Yolanda Blancarte ("Blancarte"), requested pay and time records from Legend of Asia including the hours worked and the additions and deductions to wages for overtime, housing, and meals for the kitchen employees and hours worked for the server employees. Lin and Xiao provided some records but were unable to provide all the records requested because most of the relevant records were destroyed in the basement floods.

Sometime in 2015, based on Blancarte's recommendation, Defendants implemented an electronic time clock to capture employee start and stop time for each workday rather than the paper notebooks previously used.

In response to this litigation, Legend of Asia hired accountant Melanie Bacon, CPA ("Bacon"), to summarize Legend of Asia's business records[5] and calculate the reasonable cost of the meals, lodging, and transportation provided to kitchen employees on a workweek basis.

---

[5] These records included "tax returns, utility bills and payment histories, accounting ledgers of automobile expenses, gasoline and repair receipts, and cancelled checks of rent payments." Def.'s Sugg. in Opposition at 41 (Doc. 38). Presumably these records survived the multiple floods.

4

On January 14, 2015, Xiao signed a Statute of Limitations Tolling Agreement ("Tolling Agreement") tolling the statute of limitations for claims subject to this lawsuit beginning on August 31, 2014.

**Summary Judgment Standard**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A court must view the facts in light most favorable to the nonmoving party and allow the nonmoving party to benefit from all reasonable inferences to be drawn from the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986).

**Discussion**

Plaintiff moves for partial summary judgment on the following issues under the FLSA: (1) Legend of Asia is a covered enterprise; (2) Xiao is an employer; (3) Lin is an employer; (4) Defendants violated the recordkeeping requirements; (5) Defendants should be enjoined from prospectively violating the recordkeeping requirements; (6) Defendants are not entitled to a wage credit to offset back wages owed to kitchen employees; (7) employee Jersson Pineda is not an exempt employee; and (8) Plaintiff's claims are not barred by the statute of limitations. Defendants concede issues (1), (2), and (7), and therefore, summary judgment as to these issues is GRANTED. Defendants argue material facts are in dispute as to the other issues. The Court discusses each in turn below.

## I. The Court cannot conclude Lin is an employer as a matter of law.

First, Plaintiff argues Lin is an "employer" under the FLSA provisions and therefore subject to liability for the alleged violations. Defendants argue Lin did not maintain sufficient control over the day-to-day operations of the restaurant and that her mere ownership of the business is not enough to find her an employer.

Under the FLSA, an "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). Liability under this definition extends to individuals. *Id.* § 203(a); *see Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262-63 (8th Cir. 1963). The Supreme Court noted the FLSA defines the employment relationship "expansively" and covers parties who might not be included "under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).

To determine whether an individual is an employer under the FLSA, "economic reality" prevails over technical common law concepts of agency. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961). District courts within the Eighth Circuit frequently apply a four-factor economic realities test considering whether the alleged employer: (1) had power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined employees' rate and method of payment; and (4) maintained employment records. *See Lochiano v. Compasionate Care, LLC*, No. 10-01089-CV-W-DGK, 2012 WL 4059873, at *2 (W.D. Mo. Sept. 14, 2012). No one factor is dispositive; rather, courts consider the circumstances of the whole activity. *Baker v. Stone Cnty.*, 41 F. Supp. 2d 965, 980 (W.D. Mo. 1999). The primary concern is whether the individual "possesses direct or indirect

6
Case 4:16-cv-00549-DGK   Document 44   Filed 06/22/17   Page 6 of 16

power to control significant aspects of the . . . employment." *Childress v. Ozark Delivery of Missouri L.L.C.*, 95 F. Supp. 3d 1130, 1139 (W.D. Mo. 2015).

Courts routinely recognize that a corporate officer with operational control of a company can be liable as an employer under the FLSA. *Chao v. Bauerly*, No. 03-6200 (PAM/RLE), 2005 WL 1923716, at *5 (D. Minn. Aug. 11, 2005) (collecting cases); *see also Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262-63 (8th Cir. 1963) (stating in dictum that "a combination of stock ownership, management, direction and the right to hire and fire employees," could support a finding that a corporate officer was an FLSA employer). Again, "the focus is on the totality of the circumstances of whether the individual in question is sufficiently involved in the day-to-day operations of the corporation." *Perez-Benites v. Candy Brand, LLC*, No. 1:07-CV-1048, 2011 WL 1978414, at *8 (W.D. Ark. May 20, 2011).

Considering the factors and viewing the facts in light most favorable to Defendants, the Court cannot conclude whether Lin maintained organizational control over Legend of Asia as to be sufficiently involved in the day-to-day operations.

The first factor, whether Lin had the authority to hire and fire employees, weighs against finding Lin an employer. The undisputed facts state Lin met with prospective employees but her role was limited to showing them around the restaurant and that Xiao interviewed, hired, and fired employees. While it is possible that as the restaurant's owner and assistant manager Lin had the authority to hire and fire employees, there are no facts stating that she actually did. *See Pure Ice Co.*, 322 F.2d at 263 (finding that "majority stockholder and dominant personality" in corporation "could have taken over and supervised the relationship between the corporation and its employees had he decided to do so" but because he did not, he was not an employer under the FLSA).

Considering the second factor, whether Lin supervised and controlled employee work schedules or conditions of employment, the undisputed facts state Lin created the work schedules for the hosts and that Xiao set the work schedules for the servers and kitchen employees. This factor supports a finding that Lin acted as an employer because she was involved in scheduling at least some of the employees.

The third factor, whether Lin determined the employees' rate and method of pay, weighs against finding Lin an employer. The undisputed facts state Xiao determined the wages and pay frequency for all employees, negotiated the Restaurant Salary Contracts for the kitchen employees, managed the server payroll process, and issued the kitchen employee payment receipts. However, Lin was involved in employees' pay by signing several paychecks for the servers, personally owning one of the locations used as employer-provided housing, and signing the rental agreements for both employer-provided housing locations on behalf of Legend of Asia. While Lin was involved in the payment of wages, there aren't sufficient facts stating that she determined the employees' rate and method of pay.

The fourth factor, whether Lin maintained employment records weighs in favor of finding Lin an employer. It is undisputed that Legend of Asia's important business records, including employment and payroll records were stored in the basement of Lin and Xiao's home. Thus, the undisputed facts indicate Lin maintained employment records.

Finally, the court considers two additional facts concerning Lin's day-to-day involvement in Legend of Asia: her near daily presence at the restaurant and her role as a substitute manager when Xiao is not at the restaurant by supervising the server employees and handling customer complaints. Also looming in the background is that Lin and Xiao are married, which certainly provides some indicia that Lin possessed direct or indirect control over significant aspects of the

8

employer-employee relationship at the restaurant. While these additional facts indicate Lin is sometimes involved in the day-to-day operations of Legend of Asia, viewing the totality of the circumstances, the Court cannot find as a matter of law that Lin is an employer under the FLSA. Therefore, whether Lin maintained organizational control over Legend of Asia is an issue to be resolved at trial. Plaintiff's motion for summary judgment on this issue is denied.

## II. Defendants violated FLSA's recordkeeping requirements.

Next, Plaintiff argues Defendants violated the FLSA's recordkeeping requirements because they did not: (1) make or preserve records showing the hours worked on a weekly basis, daily start and stop times, and wages for the Hispanic kitchen employees, as required by 29 C.F.R. §§ 516.2(a)(7), (a)(11); (2) make adequate payroll records for two probationary server employees, as required under 29 C.F.R. §§ 516.2(a)(1), (a)(7), (a)(11) and failed to preserve total hours worked each workweek for all server employees, as required by 29 C.F.R. § 516.2(a)(7); or (3) make or preserve records showing the additions to the kitchen employees' wages for overtime or deductions from wages for meals, housing, and transportation on a workweek basis, as required by 29 C.F.R. §§ 516.2(a)(1), 516.27(b).

To demonstrate their compliance with the recordkeeping requirement as to the kitchen employees, Defendants cobble together the Salary Contract and the payment receipts. Additionally, Defendants argue they maintained all of the required time records for the kitchen and server employees but that the basement flood destroyed the records before they could provide them to Blancarte. Finally, Defendants explain they did not make the required records for the two probationary servers because they refused to provide the required information.

Section 211(c) of the FLSA requires every employer "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and

practices of employment maintained by him . . ." The regulations require that the records must be kept in a "safe and accessible" location at the "place of employment" or a "central recordkeeping office[] where such records are customarily maintained." 29 C.F.R. § 516.7. Failure to keep accurate and adequate records is a violation of the FLSA. *See* 29 U.S.C. § 215(a)(5).

Under the regulations, the wage and time records must include, among other things, the name and address of the employee, hours worked per day and week, the daily starting and stopping time of individual employees, and additions and deductions from wages. 29 C.F.R. § 516.2(a).

Section 203(m) allows employers to include the reasonable cost of providing meals, lodging, or other facilities in employee wages. 29 U.S.C. § 203(m). The regulations require employers "maintain and preserve" records of the cost incurred in furnishing meals and lodging, 29 C.F.R. § 516.27(a), and also require the employer to maintain records showing additions or deductions from wages paid for meals and lodging on a workweek basis, even if the employee is paid on another frequency. *Id.* § 516.27(b).

The undisputed facts demonstrate as a matter of law that Defendants did not maintain the required records. While Defendants provided some records to Blancarte, they do not dispute they did not provide: (1) the total hours worked each workweek for server employees; (2) records containing the daily start and stop time of kitchen employees from September 3, 2012, until Legend of Asia implemented an electronic time clock; (3) hours worked each workweek for kitchen employees from September 3, 2012, until Legend of Asia implemented an electronic time clock; (4) the weekly deductions to kitchen employee wages for housing and meals; and (5) payroll records for the two probationary servers.

10

Regarding the records of daily start and stop times and hours worked each workweek, Defendants argue there is a dispute of material fact as to whether the records were kept or whether they were destroyed in the flood. This argument is without merit. Defendants' own statements about losing the employee time logbooks and work schedules when the basement flooded establishes they failed to preserve the relevant records, thus violating the statute. Further, Defendants do not cite, and the Court is unable to find, any authority that grants an excuse to the recordkeeping requirement for destroyed records. *See Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d 1234, 1241–42 (D. Or. 2014) (finding a violation of the FLSA's recordkeeping provision when records were lost after a sewer backup that flooded the basement where the records were kept); *Chao v. Me & Lou's Rest.*, No. CV07-385-E-EJL, 2008 WL 4832880, at *2–3 (D. Idaho Nov. 5, 2008) (finding records destroyed in flood was not an excuse from the FLSA's recordkeeping provision).

As for the records pertaining to the additions and deductions from wages for overtime, lodging, and meals of the kitchen employees, Defendants assert the Salary Contracts along with the monthly payment receipts meet the recordkeeping requirements.

The Court finds Defendants' records for wages paid in meals and lodging fall short of what is required under 29 C.F.R. § 516.27(b). The Salary Contracts do not meet the regulation's "workweek" requirement because the Salary Contract states the amount of wage paid in meals and lodging *per month*. Additionally, contrary to Defendants' assertion, the monthly payment receipts do not show the meals and lodging provided by Legend of Asia as deductions to pay. *See* (Doc. 38-12).

Finally, as to the failure to make a payroll record of the two probationary servers, Defendants explain these two employees refused to provide this information preventing them

11
Case 4:16-cv-00549-DGK   Document 44   Filed 06/22/17   Page 11 of 16

from creating the proper records. While understandable, Defendants do not cite to a provision within the FLSA that provides an excuse from the recordkeeping requirement for such a case.

The Court finds Defendants violated the FLSA's recordkeeping requirement and Plaintiff's request for summary judgment on this issue is granted.

### III. The Court grants Plaintiff's request for an injunction against Defendants from prospectively violating the FLSA's recordkeeping requirements.

Next, Plaintiff requests a prospective injunction to prevent Defendants from continuing to violate the recordkeeping provisions of the FLSA. Defendants argue an injunction is unnecessary because they maintained the proper records until they were destroyed in the basement flood and they have taken steps since the DOL investigation to further comply with the FLSA requirements.

District courts have discretion to enjoin employers from further violations of the FLSA. *See* 29 U.S.C. § 217. In exercising its discretion, courts consider "the employer's previous noncompliance and the dependability of its promise of future compliance." *Brennan v. Correa*, 513 F.2d 161, 163 (8th Cir. 1975). A district court does not abuse its discretion by granting an injunction even when the employer is in present compliance. *See Marshall v. Lane Processing, Inc.*, 606 F.2d 518, 519-20 (8th Cir. 1979) (remanding for district court to issue an injunction even though employer was in present compliance); *McComb v. Wyandotte Furniture Co.*, 169 F.2d 766, 770 (8th Cir. 1948) (same). "Where the Secretary has established violations of the [FLSA], the district court should ordinarily grant injunctive relief, even if the employer is in present compliance, unless the district court is soundly convinced that there is no reasonable probability of a recurrence of the violations." *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980).

Here, Defendants argue they have taken steps to improve compliance with the recordkeeping requirements by implementing an electronic time clock to record starting and stopping times and hours worked on a workweek basis for each employee. The Court finds Defendants have not shown "there is no reasonable probability of a recurrence of the violations" and having found Defendants violated the FLSA recordkeeping requirements, *supra* Part II, the Court grants Plaintiff's request for injunctive relief.

### IV. Defendants are not entitled to a wage credit to offset any back wages owed to the Hispanic kitchen employees.

Next, Plaintiff argues Defendants are barred from a wage credit for the housing, meals, and transportation provided to Hispanic kitchen employees to offset any liability they may be assessed because Defendants did not meet the recordkeeping requirements.

Defendants assert they meet the recordkeeping requirements necessary to permit a credit for wages paid in meals, lodging, and transportation and that Plaintiff is merely attacking the form in which Defendants maintained their records.

Section 203(m) of the FLSA allows an employer to credit toward its obligation to pay the minimum wage "the reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m). The regulations require employers to maintain records of: (1) the wages paid in meals and lodging by workweek, 29 C.F.R. § 516.27(b); and (2) the cost of furnishing the meals and lodging, *Id.* § 516.27(a). *See Donovan v. Williams Chem. Co.*, 682 F.2d 185, 189 (8th Cir. 1982).

Courts routinely deny a wage credit for § 203(m) benefits when the recordkeeping requirements are not met. *See Id.* at 189-90 (reversing district court's award of credit for lodging when employer did not meet the recordkeeping requirement); *Solis v. Min Fang Yang*, 345 F.

13

App'x 35, 38 (6th Cir. 2009) (affirming district court's decision to deny wage credit for meals and lodging when employer did not comply with the recordkeeping requirements).

As discussed in Part II, the Court finds Defendants did not meet the recordkeeping requirement under 29 C.F.R. § 516.27(b). Therefore, the Court finds Defendants cannot claim a wage credit for meals, lodging, and transportation paid to the Hispanic kitchen employees.[6] Plaintiff's motion on this issue is granted.

### V. The Tolling Agreement binds Xiao.

Finally, Plaintiff asks the Court to grant summary judgment restricting Defendants' defense that the statute of limitations bars Plaintiff's claims. Plaintiff asserts the Tolling Agreement is valid and tolls the limitations period. Defendants argue the Tolling Agreement is unenforceable because Xiao is not proficient in the English language and he could not have knowingly entered into the agreement without the assistance of an attorney or interpreter. Def.'s Sugg. in Opposition at 47 (Doc. 38). Also, Defendants argue the Tolling Agreement fails for want of consideration because it applies to expired claims. These arguments are unpersuasive.

Defendants' argument that the Tolling Agreement is invalid because Xiao is not proficient in English is without merit. Each party to a contract has a duty "to learn and know the contents of a contract before he signs and delivers it." *Hoshaw v. Cosgriff*, 247 F. 22, 26 (8th Cir. 1917); *see also Tippecanoe Beverages, Inc. v. S.A. El Aquila Brewing Co.*, 833 F.2d 633 (7th Cir. 1987) (one who signs a contract in a language that he does not understand acts at his peril). Defendants do not cite, and the Court is unable to find, any law that states a person can "sign a contract without being able to read the language of the contract and escape the terms of

---

[6] Plaintiff does not argue whether Defendants' records are adequate to meet the requirement under 29 C.F.R. § 516.27(a) substantiating cost of meals and lodging. However, because the Court finds Defendants did not meet the requirement under § 516.27(b), a wage credit is not available to them.

14

that contract as a result." *Benitez v. Namco Jefferson, LLC*, No. 14-0620-CV-W-REL, 2015 WL 686921, at *5–6 (W.D. Mo. Feb. 18, 2015) (collecting cases).

Additionally, courts have held tolling agreements can apply to expired claims. *Delano v. Abbott Lab*s, 908 F. Supp. 2d 888, 895 (W.D. Tenn. 2012); *see, e.g.*, *SPPI–Somersville, Inc. v. TRC Cos.*, Nos. C 04–2648SI, 07–5824 SI, 2009 WL 2390347, at *6, *7 (N.D. Cal. Aug. 3, 2009) (holding agreement tolled statute of limitations on expired claims because it specified that limitations period was tolled as of an earlier date, not date of agreement); *Union Bank of Switz. v. HS Equities, Inc.*, 457 F. Supp. 515, 520–21 (S.D.N.Y. 1978) (holding that plaintiff's claims were timely where parties agreed to extend statute of limitations, including for a claim that had been time-barred for over a year when agreement was signed).

Plaintiff's motion for summary judgment on the issue of whether the Tolling Agreement binds Xiao is granted. The other components of the statute of limitations defense, including whether the Tolling Agreement binds other defendants or whether the two or three-year statute of limitations applies is denied.

### VI. Plaintiff's motion to exclude Defendants' expert witness testimony is moot.

Contemporaneous with his motion for partial summary judgment, Plaintiff also filed a motion to Exclude Certain Opinion Evidence from Defendants' Expert Melanie Bacon, CPA (Doc. 31). Having found Defendants are not entitled to a wage credit because they did not comply with the recordkeeping requirement, *supra* Part IV, this motion is denied as moot.

### Conclusion

Plaintiff's Motion for Partial Summary Judgment (Doc. 34) is GRANTED IN PART as to whether: (1) Defendants violated the recordkeeping requirements; (2) Defendants are enjoined from prospectively violating the recordkeeping requirements; (3) Defendants are not entitled to a

wage credit to offset back wages owed to Hispanic kitchen employees; and (4) the Tolling Agreement binds Xiao.  Plaintiff's Motion for Partial Summary Judgement (Doc. 34) is DENIED IN PART as to whether:  (1) Lin is an employer; and (2) other components of Defendant's statute of limitations defense.

Plaintiff's Motion to Exclude Expert Testimony of Defendant's Expert Witness (Doc. 31) is DENIED AS MOOT.

**IT IS SO ORDERED.**

Date:  June 22, 2017             /s/ Greg Kays
                                 GREG KAYS, CHIEF JUDGE
                                 UNITED STATES DISTRICT COURT